UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,                      Case No. 16-20077
                                       Honorable Victoria A. Roberts
v.                                        Magistrate Judge Elizabeth A. Stafford

RAYQWAN LAMB

    Defendant.
_____/

**REPORT AND RECOMMENDATION TO DENY DEFENDANT
RAYQWAN LAMB'S MOTION TO SUPPRESS EVIDENCE [R. 16; R. 24]**

## I.    INTRODUCTION

Defendant Rayqwan Lamb is charged with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g), following his arrest on January 30, 2016. [R. 1, R. 9]. He moves to suppress the seized firearm and ammunition, as well as any of his post-arrest statements. [R. 16; R. 24].[1] After holding an evidentiary hearing on May 2, 2016, and

---

[1] The Honorable Victoria A. Roberts referred Lamb's motion to suppress for hearing and determination pursuant to 28 U.S.C. § 636(b)(1)(A), [R. 18], but this Court assumes that Judge Roberts meant to refer for a report and recommendation pursuant to § 636(b)(1)(B). *See United States v. Raddatz*, 447 U.S. 667 (1980) (magistrate judges may render recommendations on suppression motions, but not final determination).

reviewing the parties supplemental briefs, [R. 24; R. 25],[2] the Court **RECOMMENDS** that Lamb's motion be **DENIED**.

## II.    BACKGROUND

Detroit Police Officer Johnathon Gardner and his partner were on patrol on January 30, 2016 at about 5:00 p.m. when they were informed of a third-party report that four black men in a red car were armed with firearms and were smoking marijuana at a house on Monica Street. [R. 23, PgID 69-71]. According to Gardner, there was enough daylight at that time for him to "easily" see a block or two ahead. [*Id.,* PgID 73-74, 87].

In full uniform and a marked patrol car, Gardner and his partner were proceeding northbound on Monica when they saw a red car with four black men inside pulling out of a driveway and heading southbound in their direction. [*Id.*, PgID 70-74; R. 26-1; R. 26-2; R. 26-4]. Gardner's partner was driving the patrol car and made a U-turn behind the red car after it passed them – intending to stop, detain and investigate the four men – but the officers did not turn on their lights or siren. [R. 23, PgID 74-77, 92]. In response, the red car accelerated and turned into a driveway, and the four men jumped out. [*Id.,* PgID 75-76; R. 26-3]. The front passenger door was

---

[2] The government's initial response is R. 17.

closest to where Gardner was positioned at that time, and he had a clear view of Lamb exiting through that door and throwing an L-shaped object that appeared to be a handgun into the vehicle before running toward an alley. [R. 23, PgID 78-79, 88-89, 99-101].

Gardner chased Lamb and saw him jump over one fence and begin to climb a second. [*Id.*, PgID 79]. Drawing his weapon, Gardner ordered Lamb and a cohort to stop or he would shoot, and they complied. [*Id.*, PgID 79-80]. After Lamb was handcuffed, Gardner returned to the car and discovered a handgun in the area of the front passenger seat where he had seen Gardner gesture. [*Id.*, PgID 80-82; R. 26-6, PgID 167]. Gardner did not know during any of this time whether Lamb held a concealed pistol license (CPL), and Lamb never produced such a license. [R. 23, PgID 93, 97].

At the hearing, the parties stipulated that the red car was rented by someone other than any of its occupants at the time of Lamb's arrest. [R. 23, PgID 112].

## II. ANALYSIS

In support of his motion to suppress, Lamb argues that neither the third-party report nor Gardner's suspicion that he had discarded a firearm in

the car provided reasonable suspicion to justify a *Terry*[3] stop, emphasizing that firearms can be lawfully possessed in Michigan.  The government responds that Lamb was not seized until he submitted to Gardner's order to stop and that Gardner had reasonable suspicion that Lamb was engaged in unlawful activity at that time.  The government further claims that Lamb abandoned his gun when he left it in the rental car – a claim that Lamb disputes.  Because Gardner had reasonable suspicion that Lamb's possession of the firearm was unlawful, because Lamb abandoned the gun when he fled and because Gardner had probable cause to search the car and arrest Lamb, his motion to suppress should be denied.

**A.**

Officers may conduct an investigatory stop if they have a "particularized and objective basis for suspecting the particular person stopped of criminal activity and were aware of specific and articulable facts which gave rise to reasonable suspicion." *United States v. Keith*, 559 F.3d 499, 503 (6th Cir. 2009) (citations and internal quotation marks omitted).

---

[3] *Terry v. Ohio*, 392 U.S. 1 (1968).

"The determination of whether reasonable suspicion existed must be based on the totality of circumstances." *United States v. Johnson*, 620 F.3d 685, 692 (6th Cir. 2010).

Lamb's argument that the officers did not have reasonable suspicion to conduct an investigatory stop of him and his companions glosses over the legal definition of a "seizure." It is immaterial whether the third-party report of the four men in the red car gave rise to reasonable suspicion because the officers' U-turn behind the car based on that report did not amount to a seizure. The officers did not activate a siren or lights, and did not order the driver of the red car to stop. [R. 23, PgID 74-77, 92]. The officers' U-turn may have intimidated the red car's occupants, but "this kind of police presence does not, standing alone, constitute a seizure." *Michigan v. Chesternut*, 486 U.S. 567, 575 (1988). Lamb's flight from the officers further precludes a finding that he was seized prior to when he threw his gun in the car. *California v. Hodari D.*, 499 U.S. 621 (1991) (when defendant fled in response to officers' show of authority, he was not seized until he was tackled by the officers, and discarded cocaine was not the fruit of an illegal seizure). As such, Lamb was not seized until he complied with Gardner's order to stop. [R. 23, PgID 79-80]. The relevant

constitutional question is whether Gardner had a reasonable suspicion to justify ordering Lamb to stop and to detain him for further investigation.

**B.**

Lamb cites *Florida v. J.L.*, 529 U.S. 266 (2000), as demonstrating that Gardner lacked a reasonable suspicion to order him to stop, but that opinion is factually distinguishable. In *J.L.*, the Court found reasonable suspicion lacking when "[t]he officers did not see a firearm, and J.L. made no threatening or otherwise unusual movements." *Id.* at 268. Rather, "the officers' suspicion that J.L. was carrying a weapon arose not from any observations of their own but solely from a call made from an unknown location by an unknown caller." *Id.* at 270. Here, Gardner saw Lamb dispose of a suspected gun as he fled. [R. 23, PgID 78-79, 88-89, 99-101]. These actions gave Gardner reasonable suspicion to conduct an investigatory stop. *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) ("Headlong flight – wherever it occurs – is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such."); *United States v. Jones*, 673 F.3d 497, 502 (6th Cir. 2012) (reasonable suspicion when defendant threw several items to ground as he

6

fled); *United States v. Caruthers*, 458 F.3d 459, 466 (6th Cir. 2006) (unprovoked flight and furtive movements supported reasonable suspicion).

Lamb argues that possession of a firearm is legal under some circumstances in Michigan, and that his possession of the firearm, alone, did not provide probable cause to arrest him. In support, he cites *Northrup v. City of Toledo Police Dep't*, 785 F.3d 1128, 1131 (6th Cir. 2015), a civil opinion finding no reasonable suspicion to disarm and handcuff the plaintiff given the State of Ohio's policy of allowing citizens to openly carry firearms without needing to produce a license for inquiring officers. Because the *Northrup* opinion addresses reasonable suspicion to detain rather than probable cause to arrest, the Court will address application of that opinion to this case here.

*Northrup* does not support Lamb's motion to suppress. First, the court in that case indicated that the officers' actions of detaining and handcuffing the plaintiff could be justified if the jury found that the plaintiff had made a furtive movement toward his gun. *Northrup*, 785 F.3d at 1133. In other words, a finding of furtive movements could have given rise to reasonable suspicion. Here, Gardner credibly testified that Lamb fled and

7

tossed his gun into the car; those actions gave rise to reasonable suspicion for the reasons noted above.

Secondly, Michigan law regarding carrying a firearm in a car is not on all-fours with *Northrup's* description of the Ohio law that absolves those openly carrying a firearm from having to produce a license to do so. Michigan law prohibits anyone from carrying a pistol in a vehicle without a license to do so. M.C.L. § 750.227(2). When it is established that a person has carried a pistol in a car, "the defendant has the burden of injecting the issue of license by offering some proof-not necessarily by official record-that he has been so licensed." *People v. Henderson*, 391 Mich. 612, 616 (1974). The Michigan Supreme Court reiterated this holding in *People v. Perkins*, 473 Mich. 626, 638 (2005). (Citing *Henderson*, 391 Mich. at 616 and M.C.L. § 776.20).

Given the totality of the circumstances, which included Lamb's headlong flight upon seeing the officers and throwing of a gun into the car, Gardner had an objectively reasonable suspicion that Lamb possessed the firearm illegally, and he had a right to detain Lamb in order to investigate that suspicion. The next question is whether Gardner had the right to

search the car to confirm his suspicion that the object he saw Lamb throw into the car was a gun.

## C.

The government argues that the Fourth Amendment is not implicated because Lamb abandoned his gun when he threw it into the red car as he fled. The Court agrees that, as a general rule, "because a seizure does not occur when a mere show of authority occurs, but only when one yields to a show of authority, the fourth amendment does not apply to anything one may abandon while fleeing the police in an attempt to avoid a seizure." *United States v. Martin*, 399 F.3d 750, 752 (6th Cir. 2005). *See also United States v. Green*, 157 F. App'x 853, 857 (6th Cir. 2005) (officers did not violate defendant's Fourth Amendment rights by seizing drugs that defendant discarded while fleeing).

But the government goes too far in arguing that "[t]he location where the property is abandoned (like a vehicle) matters not." [R. 25, PgID 157]. The location of the discarded bag at issue was considered in *United States v. Chandler*, 197 F.3d 1198, 1200 (8th Cir. 1999), and the government cites this opinion in support of its argument. In *United States v. Liu*, 180 F.3d 957, 960 (8th Cir. 1999), another opinion cited by the government, the court

noted that the defendant left his bag in a public place. Because the defendant in *United States v. Taylor*, 722 F. Supp. 2d 937, 947-48 (W.D. Tenn. 2010), left his gun within the curtilage of his own home, the court rejected the government's abandonment theory. The *Taylor* court noted, "The capacity to claim the protection of the Fourth Amendment also depends on whether a person has a legitimate expectation of privacy in the invaded place." *Taylor*, 722 F.Supp.2d 937, 947. The Court cannot conclude that the location of whether Lamb left is gun is irrelevant; whether Lamb had a legitimate expectation of privacy in the car must be considered.

The government notes that the red car was rented in another's name and that he did not have the keys, but neither the government nor Lamb address whether Lamb may have nevertheless possessed a legitimate expectation of privacy in the car. The Court concludes that he did not. Lamb bears the burden of demonstrating his legitimate expectation of privacy. *United States v. Pino*, 855 F.2d 357, 360 (6th Cir. 1988). Specifically, "1) he must manifest an actual, subjective expectation of privacy; and 2) that expectation is one that society is prepared to recognize as legitimate." *United States v. Pollard*, 215 F.3d 643, 647 (6th Cir. 2000).

Lamb has not attempted to satisfy this burden, and he probably could not. In *Rakas v. Illinois*, 439 U.S. 128, 140 (1978), the Court rejected an argument that "passengers occupying a car which they neither owned nor leased" could challenge the legality of a search. Following *Rakas*, the Sixth Circuit held that a passenger of a rental car who was not listed as an authorized driver held no privacy interest in the car. *Pino*, 855 F.2d at 360.

Since Lamb discarded the gun into a car in which he held no legitimate expectation of privacy, Gardner did not violate his Fourth Amendment rights when he seized the gun. *Martin*, 399 F.3d at 752; *United States v. Green*, 157 F. App'x at 857.

Of further import, even if the Fourth Amendment were implicated, Gardner had probable cause to conduct a warrantless search of the car because he saw Lamb throw the gun in it. *United States v. Galaviz*, 645 F.3d 347, 357 (6th Cir. 2011).

### D.

Lamb's argument that Gardner did not have probable cause to arrest him is based upon his misplaced application of *Northrup* and other argument suggesting that Gardner's observation of Lamb possessing the firearm was insufficient. Ample authority demonstrates that Gardner had

probable cause to arrest Lamb based upon his possession of the gun, and that Lamb carried the burden of producing proof that he had a CPL license. *Henderson*, 391 Mich. at 616; *Perkins*, 473 Mich. at 638 (2005); *Conner v. Southfield Police Dep't*, 348 F. App'x 122, 124 (6th Cir. 2009); *United States v. Avant*, No. 14-CR-20673, 2015 WL 1530832, at *4 (E.D. Mich. Apr. 6, 2015), *aff'd* No. 15-2037/15-2197, 2016 WL 3057787 (6th Cir. May 31, 2016). Lamb did not carry that burden because he never produced a CPL license. [R. 23, PgID 93, 97]. For these reasons, Lambs argument that his arrest was not supported by probable cause is without merit.

### III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Lamb's motion to suppress **[R. 16; R. 24]** be **DENIED**.

s/Elizabeth A. Stafford<br>
ELIZABETH A. STAFFORD<br>
United States Magistrate Judge

Dated: July 6, 2016

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any

12

further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

13

## **CERTIFICATE OF SERVICE**

    The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 6, 2016.

                                            s/Marlena Williams
                                            MARLENA WILLIAMS
                                            Case Manager